UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Maxine Fields, on behalf of herself and others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>Beverly Health and Rehabilitation Services, Inc.; Beverly Enterprises-Minnesota LLC d/b/a Golden LivingCenter-Hopkins and Hopkins Care Center; Golden Gate National Senior Care LLC d/b/a Golden Living; and GGNSC Administrative Services, LLC,<br><br>     Defendants. | Civil No. 16-527 (DWF/LIB)<br><br>MEMORANDUM<br>OPINION AND ORDER |

Cassie C. Navarro, Esq., Joni M. Thome, Esq., and Shawn J. Wanta, Esq., Baillon Thome Jozwiak & Wanta LLP, counsel for Plaintiff.

Charles M. Roesch, Esq., and Susan H. Jackson, Esq., Dinsmore & Shohl LLP; and Katie M. Connolly, Esq., Nilan Johnson Lewis PA, counsel for Defendants.

## INTRODUCTION

Plaintiff Maxine Fields ("Fields" or "Plaintiff") has brought a claim under the Fair Credit Reporting Act ("FCRA")[1] against her former employer and its related entities. Fields alleges that Defendants failed to provide her the necessary disclosures in the proper form before procuring her consumer report. Fields does not allege that she

---

[1] 15 U.S.C. § 1681, *et seq.*

suffered any actual damages. Instead she seeks statutory damages for an allegedly willful violation of the FCRA. (Doc. No. 31, Second Am. Compl. ("SAC") ¶¶ 42-43.) Defendants have moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. For the reasons stated below, the Court grants Defendants' motion to dismiss for lack of subject matter jurisdiction and therefore does not reach Defendants' other motion.[2]

## BACKGROUND

Defendants operate a number of nursing/assisted living centers. (*Id.* at ¶ 8.) In 2014, Fields received a conditional offer to work full time with Defendant Golden LivingCenter-Hopkins in Hopkins, Minnesota. (*Id.* at ¶ 4.) Fields then met with Defendants' human-resources representative to complete a set of forms, including a Background Check Authorization Form. (*Id.* at ¶ 18, & Ex. A ("Authorization Form").)

The Authorization Form required Fields to provide her name, social security number, date of birth, current address, and any previous addresses for the last five years. (Authorization Form.) Under the date-of-birth field, the Authorization Form provided that the birthdate was to be "[u]sed solely for ensuring completion of a criminal record check" and that employers are prohibited from discriminating based on age for individuals age 40 or older. (*Id.*) In addition, Fields had to check "yes" or "no" boxes regarding whether: (1) she had ever been convicted of a misdemeanor or felony; (2) she

---

[2] Had the Court reached Defendants' other motion to dismiss, the Court would have likely concluded that Plaintiff had failed to demonstrate a willful violation of the FCRA consistent with the Court's decision in *Just v. Target Corp.*, 187 F. Supp. 3d 1064, 1067-70 (D. Minn. 2016).

was awaiting prosecution on a misdemeanor or felony; or (3) she had ever pled no contest to a misdemeanor or felony. (*Id.*) Fields checked "no" for each box, but if she had checked "yes," then she was asked to give additional details. (*Id.*)

Finally, the Authorization Form required Fields to affirm to the following:

I understand that as part of your procedure for processing my application, an investigative report about my background may be made which may include information obtained through personal interviews regarding my character, general reputation, personal characteristics or mode of living. I have the right to make a written request, within a reasonable period of time, for complete disclosure of additional information concerning the nature and scope of the investigation. I authorize investigation of all statements contained in this authorization form. ALL representations by me in this data sheet are to the best of my knowledge and belief true and correct, and I have not knowingly omitted any related information of an adverse nature. Inaccurate information may make me ineligible for employment. I also understand that having a criminal conviction is not an automatic bar for employment. In the absence of a written contract, employment with the Company is employment at the will of each party. The employment relationship may be terminated at any time at the discretion of the employee or the Company.

(*Id.*) Fields signed the Authorization Form. (SAC ¶ 18.) After signing the form, Defendant GGNSC Administrative Services, LLC procured a criminal background check on behalf of Golden LivingCenter-Hopkins. (*See id.* at ¶¶ 6, 31.) The background check showed that Fields had no criminal history. (Doc. No. 36 (Fenner Aff.") ¶ 6.) Fields then worked at Golden LivingCenter-Hopkins for fourteen months, until June 5, 2015. (*Id* at ¶ 7.)

The FCRA requires that if a person intends to run a consumer report (including a criminal background check) for employment purposes, that person must: (1) provide a clear and conspicuous document containing solely the disclosure that a consumer report

3

may be obtained for employment purposes; and (2) obtain written authorization for the procurement of the report by that person.  15 U.S.C. §§ 1681a(d)(1) & 1681b(b)(2)(A).  Under the FCRA, a plaintiff can recover statutory damages even if she has suffered no actual damages for willful violations of the FCRA.  *Id.* § 1681n.

On March 1, 2016, Plaintiff filed her first Complaint alleging a violation of the FCRA.  (Doc. No. 1.)  Plaintiff amended her Complaint twice.  (Doc. Nos. 25, 31.)  In her Second Amended Complaint, Plaintiff seeks to represent a class of plaintiffs for whom Defendants obtained a consumer report in the five years leading up to the filing of the Complaint.  (SAC ¶ 34.)  At the heart of her complaint, Plaintiff alleges that Defendants willfully violated the FCRA by failing to provide a stand-alone disclosure that clearly and conspicuously stated which type of report was going to be procured and by whom.  (*Id.* at ¶¶ 20, 28.)  As a result of this inadequate disclosure, Plaintiff alleges, Defendants failed to obtain the requisite authorization before procuring Plaintiff's criminal background history.  (*Id.* at ¶ 33.)  On December 21, 2016, Defendants moved to dismiss, arguing that the Court did not have subject matter jurisdiction and that Plaintiff had failed to allege a willful violation of the FCRA.  (Doc. No. 36.)[3]

---

[3] The Court cites to Defendants' Memorandum of Law in Support of its Motion to Dismiss (Doc. No. 37) as "Memo. at __;" Plaintiff's Opposition (Doc. No. 42) as "Opp. at __;" and Defendants' Reply (Doc. No. 44) as "Reply at __."

## DISCUSSION

### I. Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). To survive a motion under Rule 12(b)(1), the party asserting jurisdiction has the burden of proving jurisdiction. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

A Rule 12(b)(1) motion may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—that is, even if the allegations were true, they lack an essential element for jurisdiction—a court reviews the pleadings alone and assumes the allegations are true. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *accord Osborn*, 918 F.2d at 729 n.6. In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and weigh the accuracy of the allegations. *Titus*, 4 F.3d at 593; *accord Osborn*, 918 F.2d at 729 n.6.

### II. Subject Matter Jurisdiction and *Spokeo*

Federal courts are courts of limited jurisdiction. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016). Article III of the Constitution limits the courts' jurisdiction to "Cases" and "Controversies." *Id.* at 1547. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Id.* Standing has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

In *Spokeo*, the plaintiff sued after he discovered inaccuracies about himself in his credit report found on Spokeo's website. *Id.* at 1544. The plaintiff brought his claim under the FCRA seeking statutory damages. *Id.* at 1545. The district court dismissed the case for lack of standing, but the Ninth Circuit reversed concluding that the violation of the plaintiff's statutory rights was enough. *Id.* at 1546. At issue for the Supreme Court was whether the plaintiff had suffered an injury in fact. *Id.* at 1547.

An injury in fact requires that a "plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* A plaintiff can demonstrate a particularized injury by, for example, showing that her statutory rights were violated and those rights are particular to her. *See id.*

A "concrete" injury on the other hand, must be "real" and "not abstract." *Id.* While real injuries are most closely associated with tangible harm, the Court explained that a concrete injury can also be intangible. *Id.* at 1549. When faced with a plaintiff who has allegedly suffered intangible harm, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*

6

Additionally, the Court noted that Congress is well positioned to elevate intangible harms to concrete injuries. *Id.* But the Court cautioned against concluding that a plaintiff will automatically demonstrate an injury in fact merely by showing that a statute authorized her to sue. *Id.* Thus, the Court concluded, a plaintiff does not satisfy Article III standing by alleging a "bare procedural violation." *Id.* at 1550.

Here, Defendants argue that Plaintiff's injuries are not concrete. Plaintiff counters that she suffered concrete injuries in the form of an informational injury and an invasion of privacy.

### III.   Informational Injury

In her opposition, Plaintiff points to three purported informational injuries. First, Plaintiff claims that she was deprived of information regarding who was going to run the background check. (Opp. at 36-37.) Second, Plaintiff claims that she was not informed that Defendants would be procuring a criminal background check. (*See id.*) And third, Plaintiff claims that she was denied a clear and conspicuous stand-alone disclosure as required by the FCRA. (Opp. at 37-38.) The Court in *Spokeo* explained that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* at 1549 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998); *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). Plaintiff points to this portion of *Spokeo* for support to establish her informational injury, arguing that she was injured when Defendants

7

allegedly failed to inform her of who was going to run which type of report in a clear and conspicuous stand-alone document. (Opp. at 34.)

In applying *Spokeo* to informational injuries, most courts have allowed two types of claims to proceed: (1) allegations that the plaintiff was confused by the disclosure; or (2) allegations that the plaintiff was deprived statutorily required information. *See, e.g.*, *Shoots v. iQor Holdings US Inc.*, Civ. No. 15-563, 2016 WL 6090723, at *4 (D. Minn. Oct. 18, 2016) (concluding the court lacked jurisdiction absent allegations that the disclosure lacked information or that the plaintiff was confused by it); *Boergert v. Kelly Servs., Inc.*, Civ. No. 15-4185, 2017 WL 440272, at *3 (W.D. Mo. Feb. 1, 2017) (allowing a claim to proceed based on allegations that the plaintiff was confused by the disclosure); *Woods v. Caremark, L.L.C.*, Civ. No. 15-535, 2016 WL 6908108, at *4 (W.D. Mo. July 28, 2016) (concluding that the plaintiff did not allege an informational injury when the disclosure did not lack any necessary information).

In contrast, Plaintiff argues the FCRA's disclosure requirements are a substantive right, the violation of which is sufficient to confer standing. *See Syed v. M-I, LLC*, 846 F.3d 1034, 1040 (9th Cir. 2017); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 634 (E.D. Va. 2016). In *Thomas*, for example, the court concluded that § 1681b(b)(2) creates "a legally cognizable right to receive a disclosure that is clear, conspicuous, and unencumbered by extraneous information." *Thomas*, 846 F. Supp. 3d at 634. Thus, the court in *Thomas* found that a plaintiff's allegations that a disclosure was not clear or was not a stand-alone document was sufficient to demonstrate a concrete injury. *Id.* ("Thomas has alleged a concrete informational injury: that is, Thomas has alleged that he

was deprived of a clear disclosure stating that Defendants sought to procure a consumer report before the report was obtained."); *see also Syed*, 846 F.3d at 1040 ("The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process.").

Here, the Court concludes that consumers have a substantive right to the statutorily required information provided in a non-confusing manner. *See Shoots*, 2016 WL 6090723, at *7. However, the Court will not go as far as the *Thomas* Court and the Ninth Circuit in *Syed* to declare that the form of the disclosure is a substantive right. The Supreme Court in *Spokeo* explicitly noted that a violation of a notice provision of the FCRA might not constitute a concrete injury. *See Spokeo*, 136 S. Ct. at 1550. Thus, if the consumer's only complaint is that the information was not provided clearly and conspicuously in a stand-alone document, then the consumer's informational injury is really over the manner of the disclosure. This is not a sufficiently concrete injury to confer standing.

Here, Plaintiff has not alleged that she was confused by the disclosure. Instead, Plaintiff alleges that the disclosure did not inform her of (1) who was running (2) which type of report (3) in a clear and conspicuous stand-alone document.

First, Plaintiff has failed to demonstrate that Defendants were required to disclose who was running the background report. Golden LivingCenter-Hopkins contracted with GGNSC Administrative Services to perform some of its HR services, including running background checks. (SAC ¶ 6.) In her opposition brief, Plaintiff argues that

9

§ 1681b(b)(2)(A) required that she authorize the particular entity who procured the report, in this case GGNSC Administrative Services. (Opp. at 17.) Section 1681b(b)(2)(A) provides that "a person may not procure a consumer report, **or cause a consumer report to be procured**, for employment purposes with respect to any consumer, unless . . . the consumer authorized in writing . . . the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) (emphasis added). "Person" under § 1681b(b)(2)(A)(ii) refers to the entity either procuring the report or causing the report to be procured. *See Id.* § 1681b(b)(2)(A)(i)-(ii). Thus, under the FCRA an entity can cause a third party to procure a consumer report if the consumer authorizes the entity using the third party. Nothing in the statute explicitly requires the consumer to authorize the third party to procure the consumer report, and nothing in the statute explicitly requires the entity to disclose that they are using a third party.

Plaintiff provides no support other than a reference to the language of the statute for her argument that Defendants must disclose the use of a third party. (*See* Opp. at 36-37.) While Defendants did not disclose that GGNSC Administrative Services was procuring the background check, Plaintiff has not shown that she was statutorily entitled to that information under the FCRA. Thus, Defendants' failure to disclose that GGNSC Administrative Services was procuring the consumer report did not cause Plaintiff a concrete informational injury.

Second, Plaintiff has failed to demonstrate that she was not informed about which type of report Defendants were procuring. Plaintiff argues that the Authorization Form discloses only that Defendants would perform an investigative report consisting of

personal interviews and not that Defendants would be running a criminal background check. (Opp. at 14-15.) But the Authorization Form notes in two different places that a criminal background check would be performed. Specifically, the Authorization Form requests that the applicant provide her birthdate "for ensuring completion of a criminal record check"; and, as part of signing the Authorization Form, the applicant affirms that she "also understand[s] that having a criminal conviction is not an automatic bar for employment." (Authorization Form.)

Plaintiff also alleges that because the Authorization Form failed to state that a "consumer report" would be procured, Plaintiff was therefore deprived of information provided for under the FCRA. Plaintiff argues that Defendants engaged in a "bait and switch": Defendants told Plaintiff that they would procure an investigative report by performing personal interviews when in reality Defendants procured a consumer report from a credit reporting agency. (*See* Opp. at 2.) While on its face this appears to be a concrete injury, the Second Amended Complaint makes no such allegations. Instead, the Second Amended Complaint alleges that Defendants obtained a "criminal background check." (SAC ¶ 32.) The Authorization Form discloses that a criminal background check would be performed. (Authorization Form.) What is more, Plaintiff does not allege that she did not know that Defendants would be procuring a criminal background check after signing the "Background Authorization Form." Thus, Plaintiff has failed to demonstrate that she suffered a concrete informational injury.

Finally, Plaintiff alleges that she suffered a concrete injury from Defendants' failure to provide a stand-alone disclosure that was clear and conspicuous. As noted

11

above, absent Plaintiff alleging that she was confused by the disclosure or was deprived information, Plaintiff cannot demonstrate a concrete injury merely by alleging that the form of the disclosure violates the FCRA.  *See, e.g.*, *Shoots*, 2016 WL 6090723, at *4 (concluding the court lack jurisdiction absent allegations that the disclosure lacked information or that the plaintiff was confused by it); *Boergert*, 2017 WL 440272, at *3 (allowing a claim to proceed based on allegations that the plaintiff was confused by the disclosure); *Woods v. Caremark, L.L.C.*, 2016 WL 6908108, at *4 (concluding that the plaintiff did not allege an informational injury when the disclosure did not lack any necessary information).  Because Plaintiff does not allege that she was confused or was deprived statutorily required information, Plaintiff fails to demonstrate that she suffered a concrete informational injury based on the form of the disclosure.

**IV.     Invasion of Privacy**

Plaintiff also alleges that she was injured because Defendants invaded her privacy by failing to obtain her informed authorization.  (SAC ¶ 33.)  Plaintiff argues that the FCRA protects a consumer's privacy by prohibiting consumer reports unless the FCRA's requirements are strictly followed.  (Opp. at 31.)  Some courts have concluded that such allegations fail to demonstrate a concrete injury.  *See, e.g.*, S*hoots*, 2016 WL 6090723, at *4 ("By contending that non-compliance with one provision of the FCRA automatically renders a defendant's subsequent actions an invasion of privacy, [the plaintiff] would raise every technical violation of any statute to the realm of a major substantive harm."); *Groshek v. Time Warner Cable, Inc.*, Civ. No. 15-157, 2016 WL 4203506, at*2 (E.D. Wis.

Aug. 9, 2016).[4] And other courts have found that such injuries are sufficiently concrete. *Syed*, 846 F.3d at 1040 (concluding that § 1681b(b)(2)(A)(ii) provides a substantive right to privacy); *Thomas*, 193 F. Supp. 3d at 636 (concluding that obtaining a credit report without a proper disclosure and authorization constituted a privacy injury, which Congress regularly has sought to protect (citing statutory schemes for Right to Financial Privacy Act,[5] Video Privacy Protection Act,[6] and the Telephone Consumer Protection Act[7])).

Here, however, the Court need not resolve whether the FCRA's consumer-report procedures must be strictly followed because Plaintiff has failed to demonstrate that her privacy has been invaded. As part of the Authorization Form, Plaintiff disclosed she had no criminal history. Additionally, the criminal background check showed that Plaintiff had no criminal history. The Court simply cannot conclude that a consumer who freely disclosed her criminal history—which was that she had no criminal history—has

---

[4] Defendants also rely on *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925 (8th Cir. 2016). In that case, the consumer sued a cable company after it retained consumer information for too long in violation of a federal statute. In concluding that the consumer did not suffer a concrete injury, the court of appeals noted that the plaintiff had not shown that that the cable company disclosed the information, an outside party accessed the information, the cable company used the data, or that there was an increase in risk of harm from the retention of the data. *Id.* at 930. That case, however, is distinguishable because it was premised on the cable company legally obtaining the information in the first place. *See id.* Here, instead, Plaintiff's claim is premised on Defendants alleged improper access to her consumer report.

[5] 12 U.S.C § 3401, *et seq.*

[6] 18 U.S.C. §2710.

[7] 47 U.S.C. § 227.

sufficiently alleged that she suffered a real injury from her employer procuring an unauthorized criminal background check that also showed that she had no criminal history.  Thus, Plaintiff has failed to show a concrete injury stemming from an invasion of privacy.

## CONCLUSION

For the reasons outlined above, Plaintiff has failed to meet her burden of demonstrating that she suffered an injury in fact sufficient to confer this Court with subject matter jurisdiction.  Thus, the Court grants Defendants' Motion to Dismiss.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss for lack of subject matter jurisdiction (Doc. No. [36]) is **GRANTED**.

2. Plaintiff's Second Amended Complaint (Doc. No. [31]) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 1, 2017              s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge